En el Tribunal Supremo de Puerto Rico

| LILLIAM RODRIGUEZ ROSA<br>    Querellante-recurrida<br><br>    V.<br><br>MENDEZ &  CO.<br><br>    Querallada-peticionaria | Certiorari<br><br>99TSPR23 |
| --- | --- |

Número del Caso: CE-95-27

Abogados de la Parte Peticionaria: Lic. José J. Santiago
Lic. José Luis Verdiales Morales
(Fiddler, González & Rodríguez)

Abogados de la Parte Recurrida: Lic. Carlos Mondríguez
Lic. Julio Nigaglioni Arrache

Abogados de la Parte Interventora:

Tribunal de Instancia: Superior, Sala de Humacao

Juez del Tribunal de Primera Instancia: Hon. Reinaldo De León Martínez

Tribunal de circuito de Apelaciones:

Juez Ponente:

Fecha: 3/18/1999

Materia: Despido Injustificado


    Este documento constituye un documento oficial del Tribunal
    Supremo que está sujeto a los cambios y correciones del
    proceso de compilación y publicación oficial de las
    decisiones del Tribunal. Su distribución electrónica se hace
    como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Lilliam Rodríguez Rosa,

     Querellante-Recurrida

        v.                      CE-95-27

Méndez & Co.,

     Querellada-Peticionaria

OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 18 de marzo de 1999

En el día de hoy nos toca resolver si un empleado que está recibiendo tratamiento médico en la Corporación del Fondo del Seguro del Estado[1] durante horas no laborables, o sea en "C.T.", tiene derecho a la protección de seguridad en el empleo que otorga el Artículo 5(A) de la Ley del Sistema de Compensaciones por Accidentes del Trabajo.[2]

---

[1] En adelante, el Fondo.

[2] Como se explicará con más detalle, el Artículo 5(A) de la Ley de Compensaciones, 11 L.P.R.A. sec. 7, ofrece dos tipos de beneficios para el obrero lesionado o enfermo: (1) que el patrono le reserve el empleo que éste desempeñaba al momento del accidente o enfermedad ocupacional; y (2) que el obrero puede solicitar y obtener la reinstalación a su empleo, siempre y cuando cumpla con unos requisitos que exige la Ley en el referido Artículo.

Por entender que dicho Artículo únicamente aplica en los "casos de inhabilitación para el trabajo", y que un obrero que está bajo un "C.T." no está inhabilitado para trabajar, resolvemos en la negativa.

I

El 3 de agosto de 1992, Lilliam Rodríguez Rosa se reportó al Fondo debido a unos dolores en la espalda y en la región cervical atribuibles, alegadamente, a su trabajo. Ese mismo día, el Fondo concluyó que la Sra. Rodríguez padecía una "enfermedad" como consecuencia de su trabajo y que debía recibir "tratamiento médico en C.T., <u>mientras trabajaba</u>". La Sra. Rodríguez <u>trabajó continuamente</u> desde el día en que se reportó al Fondo hasta el 23 de julio de 1993, fecha en que fue despedida de su empleo, cuando todavía recibía tratamiento médico en C.T.. El 8 de septiembre de 1993, el Fondo ordenó el cierre del caso de la empleada, ya que ésta no compareció a una cita médica, dándola, de este modo, de alta.

Como consecuencia de lo anterior, Rodríguez presentó, el 17 de enero de 1994, una querella contra su patrono, Méndez & Compañía, en el antiguo Tribunal de Distrito de Puerto Rico, Sala de Humacao, alegando que fue despedida ilegal e injustificadamente. Adujo que su despido se basó exclusivamente en su condición de empleada lesionada que recibía tratamiento médico, condición que le requería tiempo de su trabajo para acudir a sus citas médicas. Por dicha razón, reclamó que le cubría la protección del

Artículo 5(A) de la Ley de Compensaciones por Accidentes del Trabajo[3] y que el patrono no podía despedirla.

El patrono contestó la querella, alegando como defensas afirmativas, primero, que el despido se debió a la ineficiencia de la querellante en el desempeño de sus funciones y, segundo, que el Artículo 5(A) no aplicaba a la presente situación. Posteriormente, Méndez & Compañía solicitó que se desestimara la acción, o que se dictara sentencia sumaria parcial a su favor, bajo el fundamento de que la reclamación de la querellante no cumplía con los requisitos del aludido articulado. La empleada querellante, por su parte, radicó una réplica a la moción de la querellada en la cual adujo que, independientemente de que la protección que ofrece el Artículo 5(A) no le cobijara, su reclamación judicial estaba amparada por las garantías que ofrece la Sección 16 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico.[4]

El antiguo Tribunal de Distrito declaró no ha lugar la moción de desestimación y/o sentencia sumaria parcial presentada por Méndez & Compañía. Inconforme, el patrono querellado radicó una moción de reconsideración, la cual

---

[3]   En adelante, Artículo 5(A).

[4]   Esta disposición constitucional reza como sigue:

> "<u>Se reconoce el derecho de todo trabajador</u> a escoger libremente su ocupación y a renunciar a ella, a recibir igual paga por igual trabajo, a un salario mínimo razonable, <u>a protección contra riesgos para su salud o integridad personal en su trabajo o empleo</u>, y a una jornada ordinaria que no exceda de ocho horas de trabajo. ..." (Énfasis suplido.)

no fue acogida. Méndez & Compañía recurrió, entonces, al antiguo Tribunal Superior de Puerto Rico, Sala de Humacao, vía certiorari, solicitando la desestimación de la querella presentada tanto al amparo de la Ley de Compensaciones como de la Constitución del Estado Libre Asociado de Puerto Rico. Este foro judicial dictó sentencia declarando no ha lugar el recurso. De dicha sentencia recurrió el patrono querellado ante este Tribunal señalando como error que el foro sentenciador incidió al resolver que el Artículo (5) le era aplicable a la empleada querellante.

Concedimos término a la querellante para que se expresara sobre la aplicabilidad, o no, del mencionado artículo de ley a los hechos particulares del presente caso. Contando con la comparecencia de ambas partes, y estando en posición de resolver, procedemos a así hacerlo.


II

La Ley de Compensaciones es una legislación de carácter remedial mediante la cual se crea un sistema de seguro compulsorio y exclusivo para compensar a los obreros y empleados que sufran lesiones, se inutilicen o mueran como consecuencia de accidentes ocurridos en sus trabajos o de enfermedades ocupacionales.[5] Segarra Hernández v. Royal Bank de Puerto Rico, Opinión y Sentencia de 1 de abril de 1998.

---

[5]    11 L.P.R.A. sec. 2.

Como parte de las garantías de dicha Ley, el Artículo 5(A)[6] brinda protección a todo empleado que se _inhabilite_ para trabajar y ordena que el patrono reserve el empleo que desempeñaba el obrero al momento del accidente por un periodo de doce meses, contados a partir del día del

_____

[6]     El Artículo 5(A) de la Ley de Compensaciones, 11 L.P.R.A. sec. 7, preceptúa que:

   "_En los casos de inhabilitación para el trabajo_ de acuerdo con las disposiciones de este Capítulo, el patrono vendrá obligado a reservar el empleo que desempeñaba el obrero o empleado al momento de ocurrir el accidente y a reinstalarlo en el mismo, sujeto a las siguientes condiciones:

   (1) Que el obrero o empleado requiera al patrono para que lo reponga en su empleo dentro del término de quince días, contados a partir de la fecha en que el obrero o empleado fuere dado de alta, y siempre y cuando que dicho requerimiento no se haga después de transcurridos doce meses desde la fecha del accidente;
   (2) que el obrero o empleado esté mental y físicamente capacitado para ocupar dicho empleo en el momento en que solicite del patrono su reposición, y
   (3) que dicho empleo subsista en el momento en que el obrero o empleado solicite su reposición. (Se entenderá que el empleo subsiste cuando el mismo está vacante o lo ocupe otro obrero o empleado. Se presumirá que el empleo estaba vacante cuando el mismo fuere cubierto por otro obrero o empleado dentro de los treinta días siguientes a la fecha en que se hizo el requerimiento de reposición.)

   Si el patrono no cumpliere con las disposiciones de esta sección vendrá obligado a pagar al obrero o empleado o a sus beneficiarios los salarios que dicho obrero o empleado hubiere devengado de haber sido reinstalado, además le responderá de todos los daños y perjuicios que le haya ocasionado. El obrero o empleado, o sus beneficiarios, podrán instar y tramitar la correspondiente reclamación de reinstalación y/o de daños en corte por acción ordinaria o mediante el procedimiento para reclamación de salarios,

accidente del trabajo o desde la fecha en que el obrero se reporta al Fondo en los casos de enfermedades ocupacionales.[7] Así también, la Ley exige que el patrono reinstale al obrero en su empleo siempre y cuando se den unas condiciones.[8] De darse las mismas y el patrono no

---

establecido en las secs. 3118 a 3132 del Titulo 32." (Énfasis suplido.)

[7] En <u>Torres González</u> v. <u>Star Kist Caribe, Inc.</u>, Opinión y Sentencia de 28 de enero de 1998, explicamos que:

"[e]ste término de reserva de empleo, conforme al Artículo 8 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 8, es de trescientos [sic] sesenta (360) días, por lo que no es equivalente al período de un (1) año o trescientos [sic] sesenta y cinco (365) días. El mencionado Artículo dispone: 'Si en las leyes se habla de meses, [...], se entenderá que los meses son de treinta días."

[8] Estas condiciones son:
(1) que el accidente o enfermedad ocupacional inhabilite al empleado para trabajar;
(2) que el empleado se acoja a los beneficios de la Ley Núm. 45, supra;
(3) que dentro de los quince (15) días de haber sido dado de alta definitivamente, autorizado a trabajar, el empleado solicite al patrono reposición en su empleo;
(4) que dicho requerimiento de reposición se haga dentro de los doce (12) meses de haber ocurrido el accidente o enfermedad;
(5) que al solicitar su reposición, el empleado esté física y mentalmente capacitado para desempeñarse en las funciones del empleo que ocupaba;
(6) que dicho empleo subsista al momento en que el trabajador solicita su reposición." (Enfasis suplido). <u>Torres González</u> v. <u>Star Kist Caribe, Inc.</u>, Opinión y Sentencia de 28 de enero de 1994.

Véase, además, <u>Vélez Rodríguez</u> v. <u>Pueblo International, Inc. y otros</u>, Opinión y Sentencia de 18 de marzo de 1994; Sección 44 del Reglamento sobre derechos de obreros y empleados del Fondo, Reglamento Núm. 3966 de 8 de agosto de 1989; J.L. Verdiales Morales, *Reserva de*

cumplir con su obligación de reinstalar al obrero o empleado, éste tendrá derecho a que el patrono le pague los salarios que él hubiera devengado de haber sido reinstalado y, además, los daños y perjuicios que ello le hubiere ocasionado.[9]

En ocasión de estudiar la disposición legal en cuestión, este Tribunal señaló que la intención de nuestro legislador al promulgar el mismo fue proteger al empleado lesionado para que éste no tuviera que enfrentarse con la indeseable incertidumbre de ser despedido por su patrono sin justa causa, o de no tener su trabajo cuando regresara, todo esto por motivo de un "accidente" sufrido en su empleo. Santiago v. Kodak Caribbean, Ltd., 129 D.P.R. 763, 770 (1992).

Sin embargo, debe recordarse que el ámbito de protección del empleado no es absoluto, pues el patrono puede despedir al obrero por actos anteriores al accidente sufrido que constituyan justa causa. Lo único que le está prohibido al patrono es despedirlo, con posterioridad al mismo, sin tener causa justificada para ello. Santiago v. Kodak, ante, pág. 770.

En el caso hoy ante nuestra consideración, el patrono querellado plantea que el Artículo 5(A) de la Ley de

_____

empleo al obrero incapacitado por accidente laboral: requisitos bajo el Art. 5a de la Ley de Compensaciones por Accidentes del trabajo, 53 Rev. Col. Ab. P.R. 117 (1992); L.A. Figueroa Rivera, La reserva de empleo del Artículo 5(A) de la Ley de Compensaciones por Accidentes del Trabajo, 33 Rev. D.P. 229-230 (1993).

Compensaciones[10] no aplica a la situación de autos porque tal disposición de ley se refiere a casos en que un empleado ha estado inhabilitado para trabajar y solicita, oportunamente, la reinstalación. Arguye además que la empleada querellante nunca estuvo inhabilitada para trabajar, hecho que ella misma admitió en sus diversas comparecencias ante el foro de instancia.

Por otro lado, la empleada querellante, aunque reconoce que no cumple con algunos de los requisitos del referido artículo, sostiene que bajo la postura del patrono querellado se hace una distinción entre el empleado que fue autorizado a ausentarse de su trabajo porque debía recibir tratamiento médico "en descanso" y aquél que fue declarado hábil para trabajar pero con derecho a recibir tratamiento médico durante horas no laborables, o sea en "C.T.". La consecuencia de esto, según la querellante, es que el empleado "en descanso" recibirá la protección contra despidos injustificados del Artículo 5(A), mientras que el que está en "C.T." podría ser destituido, aun si la razón para el despido estuviese motivada por el hecho de que el empleado recibe tratamiento médico en "C.T.". La querellante alega que si se adopta tal posición, un grupo de empleados se quedaría huérfano de la protección a la seguridad en el empleo que brinda la Ley de Compensaciones.

---

[9]    11 L.P.R.A. sec. 7.

### III

La controversia ante nos ya fue objeto de estudio y análisis por este Tribunal. En <u>Rodríguez Maldonado</u> v. <u>Lifescan (P.R.), Inc.</u>, mediante <u>Sentencia</u> emitida el 20 de enero de 1995, resolvimos, ante hechos similares al del presente caso, que <u>no</u> aplicaba el Artículo 5(A) debido a que el Fondo nunca autorizó al empleado a ausentarse y a recibir tratamiento médico "en descanso". En específico, expresamos que:

> "Sabido es que el Art. 5(A) cobija a todo empleado que se incapacite o inhabilite para trabajar, disponiendo que el patrono deberá reservar el empleo que desempeñaba el obrero al momento del accidente, así como reinstalarlo sujeto a las condiciones numeradas en el mismo artículo. ... <u>Para que cubra el Art. 5a, el obrero debe haber estado inhabilitado para desempeñar sus labores y su ausencia del trabajo recomendada o autorizada por el Fondo.</u>
>
> En el caso de autos el mismo día que Rodríguez Maldonado fue al Fondo dicho organismo determinó proveerle tratamiento mientras trabajaba; o sea, no le autorizó a ausentarse. <u>No aplica pues el artículo 5 (A)</u>." (Énfasis suplido y en el original.)

<u>Ratificamos</u> en el día de hoy dicho razonamiento y conclusión, esto es, para que sea aplicable la aludida disposición legal, <u>el obrero debe haber estado inhabilitado para trabajar y su ausencia autorizada por el Fondo</u>. Cuando dicha Corporación, <u>por el contrario</u>, determina que un empleado puede regresar a trabajar, con derecho a recibir tratamiento médico durante horas no laborables, o sea bajo "C.T." y no "en descanso", el

---

[10]    Ibid.

empleado no está autorizado a ausentarse bajo circunstancias normales.[11]

En otras palabras, la protección que brinda el Artículo 5(A) es para aquellos empleados que se incapacitan temporalmente por causa de un accidente del trabajo y que, por tal razón, <u>no</u> pueden asistir a sus empleos. Esto es lo que se conoce como una <u>incapacidad transitoria</u> para trabajar. Ante esta situación, el Fondo autoriza que el empleado se ausente de su empleo, concediéndole el derecho a tratamiento médico "en descanso". Son a estos obreros a los que el legislador, mediante la promulgación del Artículo 5(A), quiso proteger para que cuando estuvieran aptos para incorporarse a su lugar de empleo, su trabajo estuviera esperando por ellos.

Nuestra determinación encuentra apoyo en las expresiones del Secretario del Trabajo y Recursos Humanos de Puerto Rico, quien, al interpretar el aludido Artículo, ha indicado que:

> "Es irrefutable que la protección que la Ley [de Compensaciones] le ofrece al empleado es para

---

[11] La Sección 4(Q) del Reglamento sobre derechos de obreros y empleados del Fondo, Reglamento Núm. 3966 de 8 de agosto de 1989, define "tratamiento mientras trabaja (CT)" de la siguiente manera: "cuando el programa terapéutico trazado a un paciente se efectúa mientras éste sigue trabajando, <u>ya que está hábil para hacerlo según el cuadro clínico diagnosticado por el médico</u>". (Enfasis suplido).

Ahora bien, debe mantenerse presente que si el tratamiento bajo "C.T.", autorizado por el Fondo, requiere que el empleado se ausente varias horas, o algún día, de su trabajo, dichas circunstancias <u>no</u> podrán ser tomadas por el patrono como base para despedir al empleado.

cuando sufre un accidente que lo inhabilita para trabajar, de acuerdo con las disposiciones de dicha ley.

Por lo tanto, cualquier ausencia provocada por la inhabilidad para trabajar debido a un accidente o enfermedad ocupacional traería a la vida la protección de la ley.

El que el empleado esté protegido cuando se ausenta del trabajo como resultado del accidente, ya sea cuando este [sic] ocurre o algún tiempo después del mismo, dependerá de que dicha ausencia haya sido recomendada o autorizada por el Fondo...

De ahí es que surge la expresión "en descanso" que aparece en el formulario en el que se informa del accidente y que es cumplimentado por el médico que atendió al empleado.

De esta manera es que el Fondo informa que ha determinado que el accidente o enfermedad inhabilitó al trabajador para trabajar." Opinión del Secretario del Departamento del Trabajo y Recursos Humanos, Opinión Núm. 90-5 de 9 de julio de 1990.

El Fondo, por su parte, igualmente considera que un empleado está inhabilitado para trabajar únicamente cuando está recibiendo tratamiento médico en descanso. A tales efectos se ha señalado que "...el periodo de reserva de empleo aplica sólo mientras el obrero esté inhabilitado para trabajar, <u>es decir cuando está recibiendo su tratamiento médico en descanso</u>".[12] (Enfasis suplido). Así también, y en relación con los requisitos que tiene que satisfacer un obrero para que se active la protección del Artículo 5(A), dicha Corporación ha señalado que debe tratarse "...de un accidente o enfermedad ocupacional que inhabilite al obrero para trabajar y que por razón de

dicha <u>inhabilidad para trabajar</u>, el obrero se haya reportado al Fondo y <u>haya recibido tratamiento médico en descanso por el Fondo</u>".[13] (Énfasis suplido.)

Debemos tener presente que bajo los postulados del Derecho Administrativo, la interpretación del organismo al cual le compete administrar una ley merece deferencia sustancial y dicha interpretación no necesita ser la única razonable para que merezca esa deferencia, bastando con que la misma sea razonable y consistente con el propósito legislativo. <u>Rivera Rentas</u> v. <u>A. & C. Development Corp.</u>, Opinión y Sentencia de 26 de noviembre de 1997; <u>Comisionado de Seguros</u> v. <u>General Accident Insurance Co.</u> Opinión y Sentencia de 29 de enero de 1993.

Ello es así debido a que dichos organismos cuentan con una vasta experiencia y conocimiento (*expertise*) en relación con la materia con la que bregan día tras día. <u>Associated Insurance Agencies, Inc.</u> v. <u>Comisionado de Seguros de P.R.</u>, Opinión y Sentencia de 26 de noviembre de 1997; <u>Torres González</u> v. <u>Star Kist Caribe, Inc.</u>, <u>ante</u>. Como hemos visto, y en relación con la cuestión hoy ante nuestra consideración, tanto el Secretario del Trabajo como el Fondo han interpretado que un obrero está inhabilitado para trabajar cuando está recibiendo tratamiento médico en descanso y no cuando está recibiendo tratamiento médico en C.T.

---

[12]   Consulta Núm. C-94-30 de 6 de septiembre de 1994.
[13]   Consulta Núm. C-92-17 de 19 de junio de 1992.

No cabe duda de que el Artículo 5(A) tiene un objetivo loable por demás, cual es: proveer al obrero o empleado incapacitado temporalmente como consecuencia de un accidente o enfermedad ocupacional tranquilidad de espíritu por cuanto éste tiene derecho a no ser despedido a consecuencia de su enfermedad y a que se le reinstale en su empleo, de cumplir con ciertos requisitos. A pesar de que hemos sostenido, reiteradamente, que las disposiciones de la Ley de Compensaciones deben ser interpretadas liberalmente, resolviéndose toda duda a favor del obrero[14], Ortiz Pérez v. Fondo del Seguro del Estado, Opinión y Sentencia del 31 de octubre de 1994; Torres González v. Star Kist Caribe, Inc., ante, ello no significa que si "...la ley es clara [y] libre de toda ambigüedad, la letra de ella... deb[a] ser menospreciada bajo el pretexto de cumplir su espíritu"[15]. Torres González v. Star Kist Caribe, Inc., ante; Rojas v. Méndez & Co., Inc., 115 D.P.R. 50, 53 (1984). Estamos ante una de esas situaciones; esto es, la terminología en que está redactado el citado Artículo 5 (A) es una clara y libre de ambigüedades. Ello nos obliga, no obstante el propósito reparador del estatuto en sí, a interpretar el mismo conforme al significado común y corriente de sus términos. Debe mantenerse presente que el texto claro de una ley es la expresión por excelencia de la intención legislativa. Como expresáramos anteriormente, "[e]n aras de la

_____

[14]    11 L.P.R.A. sec. 2.

liberalidad no podemos ir más allá de la ley". <u>Rojas</u> v. <u>Méndez & Co., Inc.</u>, <u>ante</u>, pág. 54.

Por los fundamentos anteriormente expuestos, se revoca la sentencia recurrida y se devuelve el caso al Tribunal de Primera Instancia para procedimientos ulteriores consistentes con lo aquí expresado y resuelto.

Se dictará Sentencia de conformidad.

FRANCISCO REBOLLO LÓPEZ
Juez Asociado

---

[15]  Artículo 14 del Código Civil, 31 L.P.R.A. sec. 14.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Lilliam Rodríguez Rosa,

    Querellante-Recurrida

       v.                                    CE-95-27

Méndez & Co.,

    Querellada-Peticionaria


SENTENCIA


San Juan, Puerto Rico, a 18 de marzo de 1999


    Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia revocatoria de la emitida por el antiguo Tribunal Superior de Puerto Rico, Sala de Humacao; devolviéndose el caso al Tribunal de Primera Instancia para procedimientos ulteriores consistentes con lo aquí resuelto.

    Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri disiente sin opinión escrita. El Juez Asociado señor Negrón García inhibido.


                           Isabel Llompart Zeno
                           Secretaria del Tribunal Supremo